# UNITED STATES OF AMERICA EX REL. COLUMBIA HEIGHTS REALTY CO. *v.* MACFARLAND.

---

MUNICIPAL CORPORATIONS; TAXES; PLATS OF SUBDIVISIONS; CORPORATIONS.

1. Under secs. 1 and 2 of the act of Congress of August 27, 1888 (25 Stat. at L. 451, chap. 916), granting to the commissioners of the District of Columbia the power to make general orders necessary to regulate the platting and subdividing of land in the District, the commissioners have power to make regulations providing that no plat of a subdivision will be approved for record until all taxes, special assessments, and other charges upon the property are paid. (Distinguishing *Walter* v. *Macfarland,* 27 App. D. C. 182, and citing *Watson* v. *Carver,* 27 App. D. C. 555, and *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552.)

2. *Quære,* whether a foreign corporation organized for the purpose of buy-
ing, selling, and dealing in real estate may claim recognition in the
District of Columbia, in the enforcement of rights asserted under pub-
lic authority, in view of the statute in force here, prohibiting the
organization of corporations for the purpose of buying, selling, and
dealing in real estate.

No. 1950. Submitted October 7, 1908. Decided November 4, 1908.

HEARING on an appeal by the petitioner from an order of the
Supreme Court of the District of Columbia dismissing a peti-
tion for the writ of mandamus against the commissioners of the
District of Columbia, and discharging the rule which had been
laid upon them to show cause why the writ should not be
issued.                                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The relator, the Columbia Heights Realty Company, has ap-
pealed from an order of the supreme court of the District dis-
missing its petition for mandamus to compel Henry B. F. Mac-
Farland, Henry L. West, and Jay J. Morrow, the commission-
ers of the District of Columbia, to approve a plat of a sub-
division of lands, and permit the same to be recorded in the
surveyor's office.

It appears that the relator, a corporation organized under the
laws of the State of New Jersey, is the owner in fee simple of
many lots in block 27, Columbia Heights. That on June 1,
1908, being desirous to subdivide said lots into smaller ones,
it prepared a plat of the same, which is in conformity with the
general plan of the city of Washington. Said plat was submit-
ted to the commissioners on June 5, 1908, for approval. They
declined to approve the same, on the ground that there were
certain unpaid assessments on the lands contained therein.

The said plat was made an exhibit to the petition. Without
setting the same out, it is sufficient to say that it, and the plat
in the cause No. 1949, submitted at the same time, show that
one or more streets and alleys of the legal width are laid out

across the lots, where there had been none before the proposed subdivision.

The answer to the rule to show cause why the writ of mandamus should not issue as prayed, alleges:

1. That the Code of the District of Columbia prohibits the organization of corporations for the purpose of buying, selling, and dealing in real estate, and that as the relator's charter, a copy of which is attached, shows that the relator was organized in New Jersey for that purpose, it is not entitled to carry on such a business in the District.

2. That in proceedings relating to the opening and improvement of Eleventh street, assessments were levied upon the lots in question, in the year 1899, which have been confirmed by decrees of the supreme court and court of appeals of the District of Columbia; and, although appeals have been prosecuted therefrom to the Supreme Court of the United States, the said decrees were not superseded. It appears that said assessments amount to a large sum in gross, assessed against the lots in question as originally designated, and constitute liens thereon for which they may be sold. It appears also that the titles to said lots have been acquired by the relator by purchase from their several owners since said assessment was made.

This second ground of refusal to approve the new survey and plat is founded on a clause of the regulations of the commissioners in effect since May 15, 1899, which makes the payment of "all taxes, special assessments, and other public charges upon the property," the subdivision of which is sought to be approved and recorded, a condition precedent to said approval. The commissioners allege in their answer that this condition is necessary to regulate the platting and subdivision of lands, because the collector of taxes cannot receive a proportionate part of an entire tax; the commissioners are not allowed by law to abate any tax or exempt any property from taxation; they have no means to apportion a tax; the collector cannot sell any property except as assessed; there is no method provided by law for the reassessment of said benefits according to the proposed subdivision; and they cannot alter or amend the verdict or judgment establishing the same.

*Messrs. Douglas, Baker, & Sherrill* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The main question for determination is whether the commissioners were invested by Congress with the power to make any such regulation.

Secs. 1 and 2 of the act of August 27, 1888, under which said regulation, among others, was promulgated, read as follows:

"Sec. 1. That the commissioners of the District of Columbia be, and they are hereby, authorized and directed to make and publish such general orders as may be necessary to regulate the platting and subdividing of all lands and grounds in the District of Columbia; and no such plat of subdivision made in pursuance of such orders shall be admitted to record in the office of the surveyor of said District without an order to that effect indorsed thereon by the commissioners of said District.

"Sec. 2. That all spaces on any duly recorded plat of land thereon designated as streets, avenues, or alleys shall thereupon become public ways, provided they are made in conformity with the provisions of sec. 1 of this act, and as such be under the protection of the laws and ordinances in force applicable to public roads out of said city." [25 Stat. at L. 451, chap. 916.]

Sec. 4 provides that the orders of the Commissioners made pursuant to this act shall have the force and effect of law thirty days subsequent to the day of publication.

Sec. 5 further provides that no subdivision shall be recorded unless made in conformity with the general plan of the city of Washington. Secs. 1, 2, and 5 of the act aforesaid were substantially re-enacted in the Code which went into effect January 1, 1902 (see sec. 1601–1603 [31 Stat. at L. 1427, 1428, chap. 854]), nearly three years after the promulgation of the regulations.

It is well settled that the commissioners are ministerial officers who may, in the discretion of Congress, be invested with the power to make rules and regulations concerning local affairs. *Walter* v. *Macfarland,* 27 App. D. C. 182, 184, 185. In that case it was said: "Municipal governments exist and exercise authority through legislative sanction. For convenience of administration they are created as agents of government for certain local purposes, and have such powers only as are expressly conferred, or may be fairly and reasonably implied as necessary to carry into effect such as have been expressly granted." See also *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552, 558.

Tested by this rule, we are of opinion that the regulation was within the power of the commissioners. The acts of Congress conferring the power in the cases above cited were very different in their tenor and purpose from that relied on in this case. In the *Walter Case,* the commissioners, under the power to control and repair streets, undertook to narrow one of the original streets of the city. As was said, if this power be implied, then it may be exercised in all of the streets and avenues, to any extent short of closing one of them completely; and it is so great and far-reaching in its consequences, not only to the abutting lotowners, but to the general public also, that it could not reasonably be inferred that Congress had contemplated its extension through the general power to control and repair. In *United States ex rel. Daly* v. *Macfarland* the several acts relating to the subject-matter were comprehensive in their details, and cover, as the court said, "not only the licensing of plumbers, and the practice of plumbing, but also specify the authority of the commissioners in respect thereto."

Sec. 1 of the act under consideration contains a broad grant of power to the commissioners to make all general orders necessary to regulate the platting and subdividing of all private property, subject to the one limitation of sec. 5, that all subdivisions shall be in conformity with the general plan of the city of Washington. It is evident that Congress deemed it expedient to leave all other details in respect of the subject-matter to the discretion

of the commissioners, and hence conferred a broad power which includes within it all other powers necessary to carry out the general object,—that is to say, all powers germane to the object and reasonably necessary to effectuate it with due regard to the public and private interests involved. That the power exercised in this instance was a reasonable one, we think is sufficiently clear. Before the enactment of the act, the opening of streets, with assessments for damages, as well as benefits incurred by adjacent property, had been frequent, and was likely to increase rather than diminish in frequency. The property embraced in this subdivision had been assessed for benefits, and the same had been fastened as liens upon the several lots, for which they could be sold to the tax collector. Grant that the lien would necessarily follow any portion of a formerly designated lot into the new arrangement of boundaries and divisions provided in the subdivision, and that the collection thereof might still be fully enforced, nevertheless the difficulties in the way that may well be apprehended would be many and serious. But a far greater difficulty, and apparently an insuperable one, would result from the necessary operation of sec. 2 of the act. This provides that all streets, avenues, and alleys designated in the subdivision shall become public ways, provided they are made in conformity with the provisions of the preceding section. See also Code, sec. 1602. The effect of this dedication of the property to the public—the United States—would be to exempt such parts of the former lots as are contained in the streets and alleys from the assessment, under the provisions of the act approved March 3, 1903 (32 Stat. at L. 961, chap. 992). The result of this would be to extinguish the assessment in case a lot be wholly occupied by the street, or, if not wholly occupied, to cast the entire burden, probably, upon the remaining portions not contained in the street. In the latter event, further delay and litigation would naturally follow. But let it be assumed, for the purpose of the argument only, that the act last mentioned would not apply to assessment liens upon the parts of lots designated as streets and alleys, secured prior to their dedication to public use. In that event the designated street would

pass into private ownership, through sale for the enforcement of the lien, and thereby cease to be a public way. Such a result would destroy the very purpose of the subdivision and its approval, and work irreparable mischief to persons who might purchase the newly designated lots on the faith of the approval and record of the subdivision. It is contended, however, that the mere approval and record of the subdivision could not effect such dedication of the streets designated therein, but there would have to be a further act of acceptance of the dedication by the commissioners or by Congress. The express terms of the section refute this argument, and it has no support in the decision relied upon. *Watson* v. *Carver,* 27 App. D. C. 555, 559. That decision, in fact, upholds the view above expressed, of the operation of the section. The alley, the right to the use of which was in controversy between private owners, had been designated by the former owner in a subdivision made by him, and recorded, and used as a private way. It was only 5 feet in width. As was said in the opinion, it was "a mere *cul de sac,* of no use to the public, and by the public never used." The order then in force also required all public alleys to be not less than 10 feet in width. In the discussion of the point, the court, speaking through Mr. Justice Duell, said:

"We have seen that an act of Congress governs the creation of public ways in the District of Columbia; that the commissioners of the District are vested by said act with the power to regulate the platting and subdivision of lands in the District, and to that end may make general orders; and that the provisions of said act must be complied with in order that the streets, avenues, or alleys designated on recorded plats of lands become public ways. It further appears that in conformity with the said act the commissioners of the District, on May 20, 1895, had adopted an order requiring public alleys to be not less than 10 feet in width. Such order was in force when Caldwell recorded his subdivision of lot 14 and no modification of or special exception to the order is shown to have been made which would authorize the acceptance of the proposed alley, which concededly was only 5 feet in width. We are of the opin-

ion that in the absence thereof the proposed alley did not become a public way, that the public acquired no right of way over it, and that no title vested in the United States."

In view of the conclusion reached on this point, it is unnecessary to consider the interesting question raised by the commissioners as to the right of the relator to claim recognition in the District of Columbia, in the enforcement of rights asserted under public authority.

We are of the opinion that the regulation was within the power extended to the commissioners, and consequently that the court was right in ordering that the rule be discharged and the petition dismissed. The judgment must therefore be affirmed, with costs; and it is so ordered.        *Affirmed.*